IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[2] TANIA RAMÍREZ-LANDRAU,<br><br>Defendant. | CRIM. NO.: 15-158(JAG/SCC) |

**REPORT AND RECOMMENDATION**

On the basis of a tip from a confidential informant, followed by some rather desultory surveillance, a warrant was issued authorizing a search of two houses in San Juan, Puerto Rico. A search of the houses revealed narcotics and an illegal firearm, and Defendant Tania Ramírez-Landrau was subsequently indicted on a weapons charge. Ramírez has now filed a motion to suppress the evidence against her, Docket No. 30, which was referred to the undersigned for a report and recommendation by the presiding district judge, Docket No. 35. I recommend

UNITED STATES v. RAMIREZ-LANDRAU                                    Page 2

that the motion be denied without a hearing.

Ramírez purports to seek relief under *Franks v. Delaware*, 438 U.S. 154 (1978), which is the vehicle defendants use to challenge the veracity of statements made in a warrant application. A defendant seeking a *Franks* hearing must thus make specific allegations of material falsity,[1] and she must typically support these allegations with evidence. *Id.* at 171. But apart form some minor points,[2] Ramírez makes no clear

---

1. That is, these false statements must be *necessary* to the finding of probable cause, and they must moreover have been made knowingly or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

2. For example, the warrant affidavit describes one of the residences as "white in color," Docket No. 34-1, at 9, and Ramírez, relying on a photo, says it's blue, Docket No. 30-1. There's probably no discrepancy here, as the Goverment contends—and the affidavit, read closely, confirms—that the affiant was describing the back of the house, which a photo shows is white. Docket No. 34-1, at 9 (describing the residences from the rear); Docket No. 34-2 (photo of rear of residence). Similarly, the affidavit describes the houses as on Calle Esdras, Docket No. 34-1, at 9, which Ramírez (citing nothing) says is actually the street *behind* the houses, Docket No. 30, at 7. These are minor discrepancies, and even if Ramírez prevailed on these points it is not clear why a *Franks* remedy would be appropriate. After all, Ramírez doesn't challenge the substance of what the surveillance revealed, and in any case, as I explain below, the surveillance adds very little to the probable cause calculus.

| UNITED STATES v. RAMIREZ-LANDRAU | Page 3 |
|---|---|

allegations of falsehood. Instead, her motion as written makes the broader claim that the affidavit, which was based almost entirely on the account of a confidential source, simply lacked probable cause.[3] *See United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997) ("determining the sufficiency of an affidavit" in support of a search warrant).

According to the warrant affidavit, the investigation in this case began on the morning of February 11, 2015, when a confidential source, "who in the past provided information that led to the arrests of several subjects and the seizures of controlled substances and currency," provided information to

---

**3.** Ramírez also cites caselaw recognizing a *Franks* remedy where a warrant affidavit omits material information. *See* Docket No. 30, at 9. Ramírez never specifies what these alleged omissions were, but I presume she's talking about the affidavit's supposed failure to state that there was no "objective evidence" of a drug point nearby. *See, e.g., id.* at 10. That the surveillance did not reveal the operation of a drug point is implicit in the affidavit's failure to mention such operation, and so I would not understand this to be a material omission under *Franks*, as the information's inclusion would not have affected the probable cause analysis. In any case, what Ramírez really seems to be arguing is that there was no probable cause for the search, and so I analyze her motion under that rubric. *See, e.g., id.* at 5 ("Neither the allegations in the Affidavit, nor the surveillance conducted by HSI agents, and or task force agents supports operation of any drug point in front of the Houses . . . .").

HSI regarding a drug conspiracy based out of two particular houses. Docket No. 34-1, at 10. The source said that he had personally been in the houses, where he had seen narcotics packed for distribution as well as illegal weapons. *Id.* at 10–11. The source also alleged that there was a drug point across the street from the residences. *Id.* at 11. A short while later, HSI agents, along with the source, identified the houses. *Id.* at 12. Later that afternoon, the agents returned and observed that a Mitsubishi Lancer was parked in front of one of the houses; its license plate showed it to be registered to a person then serving a federal sentence for drug trafficking. *Id.* According to the affidavit, this person owned several vehicles that were "believed" to be used for drug trafficking. *Id.*

Thus, the affidavit's probable cause showing is the tip plus the Lancer. The Government argues corroboration, but its showing is weak: beyond the fact that the houses existed, nothing the source told HSI was confirmed by their surveillance. The source, for example, named several individuals by their nicknames and said that a particular vehicle was often at the houses. The surveillance revealed a non-matching vehicle, but not the identity of its driver; neither was its owner—who was in jail at the time of the surveillance—shown to be one of

the individuals the source mentioned. To be sure, the presence of a drug trafficker's car at the house adds credence to the source's story, but I do not understand it to have corroborated any details of the source's claims.

The question, then, is whether the source's claims, combined with the presence of a trafficker's car, supports a finding of probable cause. This is a close question. Where a probable cause finding is based on the word of a confidential source, the First Circuit instructs courts to consider the totality of the circumstances, with special attention paid to (1) whether the affidavit establishes the source's veracity and the basis of his knowledge; whether the "informant's statements reflect firsthand knowledge"; (3) whether any of the informant's factual statements were corroborated; and (4) "whether the law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information." *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011). No factor is essential, and "a stronger showing of supporting evidence as to one or more factors may effectively counterbalance a lesser showing as to others." *Id.* (citing *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996)). Notably, moreover, at least one Court of

Appeals has specifically held that corroboration is not required where the source's statements otherwise have sufficient indicia of credibility. *See, e.g.*, *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (explaining that the law "does not invariably require an affiant to provide corroboration for a confidential informant's statements contained in an affidavit supporting a search-warrant application"). But while the First Circuit has held that no factor is indispensable, its cases have by and large tended to regard corroboration—even of innocent activity—as the most useful indicator of reliability. *See, e.g.*, *United States v. Brown*, 500 F.3d 48, 55 (1st Cir. 2007) (relying on police success in corroborating informant's predictions); *United States v. Greenberg*, 410 F.3d 63, 69 (1st Cir. 2005) (similar); *United States v. Link*, 238 F.3d 106, 110 (1st Cir. 2001) (similar).

An interesting case in this regard is *United States v. Samboy*, in which a source, arrested for a narcotics conspiracy, identified his supplier to the police and told them the location of the supplier's stash. 433 F.3d 154, 156–57 (1st Cir. 2005). Although the police at that point had an identifiable source who they knew to be knowledgeable (and subject to their wrath should he lie), and though he reported first-hand knowledge of the supplier's criminality, the police felt they did not yet have

probable cause. *Id.* at 159–60. The police thus went on to set up a controlled buy using their source as bait. *See id.* at 157–58. Although *Samboy* was not a challenge to a warrant, the court's analysis turned on the precise moment when probable cause existed. According to the First Circuit, the police were right to wait—or at least justified in waiting—despite the source's statements, because "[u]ncorroborated tips are often insufficient to provide a reasonable basis to enter a person's home." *Id.* at 159. Indeed, even once the police had heard phone calls between the source and the target discussing (noncomittally) the possibility of a deal, the court found that the police's continuing belief that probable cause was lacking justified. *Id.* at 160.

    Here, I am at a loss to explain why the source's information to HSI should go further to proving probable cause than did the cooperator's information in *Samboy*. The source here reported first hand knowledge of the criminality, and he was known to police and thus could be held responsible for any untruths. *Brown*, 500 F.3d at 54 ("[A] tip that describes the criminal activity in detail is more likely to be reliable" because it indicates the source has "inside knowledge."); *Greenberg*, 410 F.3d at 67 (holding that face-to-face tips and tips from sources

whose identities are known are entitled to more reliability); *Link*, 238 F.3d at 110 (explaining that a source's tip is entitled to more credibility where the source has "provided reliable information in previous investigations"). These considerations, however, would have applied with similar force to the source's information in *Samboy*. Indeed, the *Samboy* informant might have been entitled to greater credibility given that he was then under threat of prosecution and so had an incentive to provide useful and truthful information. On the other hand, the source in this case gave a more detailed account than the one in *Samboy* seems to have done, and the First Circuit there only held that the police were justified in thinking probable cause did not exist, not that it did not exist in fact. Perhaps the police were just being cautious. And, of course, the presence of a known trafficker's car at the scene, while not corroborative of any specific details of the informant's tip, certainly makes it more likely that the tip was true and that drugs were being trafficked from the houses.

Reasonable judicial minds thus might differ on the question of whether the affidavit in this case stated probable cause for the search. The issuing magistrate plainly believed probable cause to exist, and in her reasoning she would likely be joined,

at the very least, by the judges of the Sixth Circuit. *Cf. Brown*, 732 F.3d at 574 (holding that probable cause may exist where a source's tip is not corroborated but where the informant is "personally known by the affiant to be reliable" and has "alleged direct, personal observation of criminal activity"). Other judges might well make a contrary finding, and had I been presented with this affidavit in the first instance I might have been among them. But my task is not to review the warrant application *de novo*; rather, I am to ask only whether the issuing "magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Here, the issuing magistrate's decision had such a substantial basis, and so her probable cause determination cannot be overturned. *See United States v. Leon*, 468 U.S. 897, 914 (1984) (providing that "great deference" should be afforded to magistrates' probable cause determinations).

And even if that were not the case, the exclusionary rule would not apply in these circumstances. The HSI agent applied in apparent good faith for a warrant, and the search he thereafter conducted was in reliance on the magistrate's acceptance of his application. In such circumstances, *Leon* prec-

ludes the application of the exclusionary rule. *Id.* at 920–21 (holding that the exclusionary rule generally does not operate where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). An exception to *Leon*'s rule permits exclusion where the warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610 (1975)); *see, e.g.*, *United States v. Cordero-Rosario*, — F.3d —, 2015 WL 1965871, at *7 (1st Cir. May 4, 2015) (finding affidavit so lacking in probable cause as to require exclusion where it contained nothing but conclusory assertions). But for the reasons I've explained above, this was not such an affidavit, and so the exception does not apply.

For all of these reasons, I RECOMMEND that the motion to suppress be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st

Cir. 1986).

In San Juan, Puerto Rico, this 5th day of June, 2015.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES MAGISTRATE JUDGE